**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2447-19

EXCEL PHARMACY, INC.,

    Plaintiff-Appellant,

v.

VALERIE ORTIZ and HEALTH
SMART PHARMACY &
CONVENIENCE STORE, LLC,

    Defendants-Respondents.

_____

Argued March 22, 2021 – Decided May 14, 2021

Before Judges Sabatino, Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000120-18.

Keith J. Roberts argued the cause for appellant (Brach Eichler, LLC, attorneys; Keith J. Roberts, of counsel and on the briefs; Richard B. Robins, on the briefs).

Raymond J. Seigler argued the cause for respondent Valerie Ortiz (Chasan Lamparello Mallon & Cappuzo, PC, attorneys; Raymond J. Seigler, of counsel and on the brief).

Nirmalan Nagulendran argued the cause for respondent Health Smart Pharmacy & Convenience Store, LLC (Miller, Meyerson, & Corbo, attorneys; Nirmalan Nagulendran and Gerald D. Miller, on the brief).

PER CURIAM

Plaintiff Excel Pharmacy, Inc. appeals from the Law Division order denying its motion to vacate the settlement agreement it reached with defendants. We affirm.

Plaintiff is a pharmacy located in Jersey City. Defendant Valerie Ortiz was employed by plaintiff as a pharmacist from February 2014 to January 2018. When Ortiz began her employment, she and plaintiff entered into an employment agreement (Agreement). The Agreement included non-competition and non-solicitation provisions that applied during and after Ortiz's employment. Pertinent to this litigation, for two years after the termination of her employment, Ortiz was

> not in any capacity (whether in the capacity as a Pharmacist, officer, director, partner, manager, consultant, agent or owner) . . . [to] advise, manage, render or perform services to or for any person or entity which is engaged in a business competitive to that of [plaintiff] . . . within ten miles of [plaintiff].

A-2447-19

On January 11, 2018, plaintiff's owner advised Ortiz she was terminating her employment for reasons unrelated to this lawsuit. The termination became effective January 31, 2018.

Defendant Health Smart Pharmacy & Convenience Store, LLC is a pharmacy also located in Jersey City, less than a mile from plaintiff. Health Smart is owned by Ortiz's sister, Vea Cayaba-Wong.

In August 2018, plaintiff filed a verified complaint and order to show cause in the Chancery Division alleging Ortiz had violated the restrictive covenants in the Agreement by opening, working at, and owning Health Smart. Plaintiff asserted Health Smart was owned by Ortiz's sister as a "straw person" and that Ortiz conspired to open the competing pharmacy before she was terminated.

In opposing the application, Ortiz submitted an affidavit in which she denied violating the Agreement and asserted plaintiff's claims about her involvement with Health Smart were "wholly untrue." Ortiz further alleged that plaintiff itself violated the Agreement when it did not give her a promised ownership share in May 2016 and consistently failed to pay her the specified salary and percentage of net profits. Ortiz contended plaintiff owed her between $100,000 and $200,000 for her share of net profits under the Agreement.

3

Ortiz's sister submitted an affidavit on behalf of Health Smart stating Ortiz was not employed by Health Smart as a pharmacist or in any other capacity.

Within a week after defendants' submissions, the parties, with counsel, reached a settlement and placed its terms on the record on August 27, 2018.[1] The parties agreed to a mutual release of all claims arising out of the Agreement and stipulated that the restrictive covenants would remain in place until May 1, 2019. This was a reduction of the temporal terms originally established in the Agreement.[2]

Plaintiff's counsel specifically requested Ortiz testify that she understood the restrictive covenants would remain in effect until May 2019. Ortiz agreed. Plaintiff's counsel emphasized that was "the important bargain[ed-] for consideration to make the case go away."

In April 2019, plaintiff filed a second order to show cause, alleging Ortiz had violated the settlement agreement. An affidavit was later provided in May, from Ricardo Valeroso who described a conversation he had with Ortiz in June

---

[1] The parties never signed a written settlement agreement. Correspondence between counsel reflects an agreement on the essential terms but a dispute regarding its effective date.

[2] The initial restrictive covenant regarding the non-competition clause was in effect until January 31, 2020.

A-2447-19

2018 in which Ortiz told him she had "a new pharmacy" called Health Smart. According to Valeroso, Ortiz stated the pharmacy was "under her sister's name because it was unethical for [Ortiz] to own the pharmacy because she had been the pharmacist for Excel Pharmacy which was nearby Health Smart Pharmacy."

On May 31, 2019, plaintiff issued a subpoena to McKesson Corporation, a pharmaceutical supplier, for all records and communications related to or arising out of contracts between McKesson and Health Smart. In response, McKesson produced: (1) a certificate from the New Jersey Division of Consumer Affairs (DCA), Board of Pharmacy, licensing "Health Smart Pharmacy & Convenience Store LLC Valerie Joanne Ortiz" to operate as a pharmacy effective April 11, 2018; and (2) various emails between Ortiz and McKesson in May 2018 related to Health Smart's credit application and plans to open the business.

Plaintiff also submitted an Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, request with the DCA on August 20, 2019 for "all documents and filings for" Health Smart. The records produced included: (1) an application for a permit to operate a pharmacy submitted by Cayaba-Wong on January 24, 2018; the typewritten application listed Minh Tran as the pharmacist-in-charge, while a handwritten notation listed Ortiz on the permit application as a

A-2447-19

pharmacist to be employed by Health Smart and as the pharmacist-in-charge; (2) photographs taken of the Health Smart premises during the DCA's inspection on March 26, 2018 including a picture of a sign in Health Smart's window listing Ortiz as the pharmacist-in-charge; (3) a DCA inspection report issued March 29, 2018 designating Ortiz as the recipient for the "Pharmacy Permit/CDS License Approval Letter"; (4) a Health Smart Pharmacy Personnel Identification Form indicating Ortiz was employed as a "consultant" and worked forty hours a week; (5) an agreement dated May 1, 2018 in which Ortiz agreed to sublease the ground floor of a building—Health Smart's place of business—to her sister; (6) a Notice of Change of Pharmacist-in-Charge for Health Smart designating Ortiz as the outgoing pharmacist-in- charge as of April 15, 2018 and Minh Tran as the incoming pharmacist-in-charge as of April 16, 2018; Cayaba-Wong is listed as the permit holder of Health Smart; and (7) a certificate of formation for Health Smart as an LLC listing Cayaba-Wong as its registered agent and sole member and manager.

After reviewing this documentation, plaintiff no longer desired to enforce the settlement agreement. Instead, it filed a motion to vacate the settlement agreement and for leave to file an amended complaint. Plaintiff asserted defendants purposely deceived it regarding Ortiz's involvement with Health

6

Smart and it would not have consented to the settlement agreement if it knew Ortiz was violating the restrictive covenants.

Defendants opposed the motion. Ortiz submitted an affidavit in which she denied misleading the court or violating the Agreement. While she acknowledged "assist[ing] [her] sister when [her sister] initially opened [Health Smart][,]" she asserted this assistance ended before plaintiff filed its initial law suit in August 2018. Ortiz stated she never owned Health Smart and was never employed by the business. She further explained she did not believe she violated the Agreement because she was never compensated by Health Smart.

Ortiz also explained why her name appeared on the documentation produced by McKesson and the DCA. She stated she originally leased a space in May 2017 to allow her brother to open a business, but he returned to the Philippines after his application for a business visa was denied in February or March 2018. Ortiz further stated that once Health Smart became operational, her sister began renting the space directly from the property owner.

Ortiz explained that her name appeared on certain forms because she attended the March 2018 inspection of Health Smart when her sister and other employees were unable to be present. Ortiz stated she informed the inspector she was not employed by Health Smart. According to Ortiz, the inspector told

7 <span></span>

her to put her name on Health Smart's permit application anyway because she was present during the inspection. The inspector "told [her] that the paperwork had to be put in [her] name . . . however, the owner could just call the Board of Pharmacy before the license was issued, so that the correct name (Minh Tran) could be put on the license."

Ortiz further stated that:

> During the inspection, [the inspector] also advised me that in order for the process to move forward, he had to put my name on the application form. That is why my name was hand-written by [the inspector] and Ms. Tran's name is typed. [The inspector] also instructed me to print out a piece of paper with my name and Pharmacist in Charge and put it on top of Minh Tran's name so that he could take a picture of it.

Cayaba-Wong also submitted an affidavit essentially corroborating the statements made by Ortiz. She conceded that Ortiz assisted her "initially" when she opened the pharmacy, but the "assistance ended prior to the commencement of the lawsuit." She stated further that Ortiz was never an employee or pharmacist at Health Smart and Ortiz was not compensated for her "assistance."

Ortiz's sister explained that Ortiz was not listed anywhere in the paperwork when Cayaba-Wong filed the pharmacy permit application with the Board of Pharmacy in February 2018.

 A-2447-19

Cayaba-Wong also advised that the initial inspection of the new pharmacy was scheduled for March 23, 2018. Although Cayaba-Wong and Tran waited at the pharmacy for the inspector to arrive, he never appeared. The inspector then rescheduled the appointment for March 26, but neither Cayaba-Wong or Tran were available to meet him that day. Therefore, Cayaba-Wong asked Ortiz to show the inspector the proposed pharmacy.

According to Cayaba-Wong, she later contacted the Board of Pharmacy regarding the proper name for the pharmacist on the license. She stated she was told to fill out a "Notice of Change of Pharmacist in Charge" form. She did so and she later received two licenses in the mail – one listed Tran's name, the other listed Ortiz. Defendants' opposition included a copy of the license from the DCA issued April 11, 2018 and listing Minh Tran as the pharmacy license holder.

Additionally, defendants included an affidavit from Valeroso in which he stated he was "correct[ing] material inaccuracies" in the earlier certifications he had provided to plaintiff. He stated the conversations he described earlier between he and Ortiz "did not occur as written" and he was "pressured to sign" them by plaintiff's owner, who was aware the certifications "had information that was completely untrue. . . ."

9

In a reply certification, plaintiff's owner contended Valeroso's statements were "fabricated" and "obvious retaliation for a recent failed real estate transaction between us and because I refused to loan him money."

The Chancery Division judge issued an oral decision on September 27, 2019 denying plaintiff's motion to vacate the settlement agreement. The judge noted plaintiff could only rescind the settlement agreement with clear and convincing proof that the settlement was achieved fraudulently.

The judge stated: "Although plaintiff submits evidence that might support an allegation, those assertions [were] quite clearly refuted with substantial evidence and explanation by defendants." Therefore, "[a]t best, because the competing affidavits submitted, and the speculation of plaintiff in particular, . . . the evidence [was] [] in equipoise and insufficient to permit a conclusion that [was] based on the higher standard of proof, clear and convincing evidence." A memorializing order was entered the same day.

On January 14, 2020, the court entered a consent judgment that dismissed the case with prejudice but preserved plaintiff's right to appeal the denial of its motion to vacate the settlement agreement.

On appeal, plaintiff contends defendants' material misrepresentation that Ortiz did not violate the Agreement induced plaintiff to settle the case. Plaintiff

A-2447-19

asserts the court erred in concluding it did not show clear and convincing evidence of the misrepresentation and fraud in the settlement of the initial lawsuit.

The decision to vacate a judgment or order lies within the sound discretion of the trial judge, guided by principles of equity. Hous. Auth. of Town of Morristown v. Little, 135 N.J. 274, 283 (1994). Accordingly, we will only reverse a trial court's ruling on a motion to vacate where there is an abuse of discretion because its "'decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. ex rel. U.S. Dep't of Agric. v. Scurry, 193 N.J. 492, 504 (2008) (alteration in original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

As stated, plaintiff asserts it demonstrated by clear and convincing evidence that Ortiz made a material misrepresentation regarding her compliance with the Agreement's non-competition provisions. Plaintiff asserts the documents produced by McKesson and the DCA "unquestionably prove[]" Ortiz violated the Agreement. We disagree.

There is a strong public policy in favor of enforcing settlement agreements, which is "based upon 'the notion that the parties to a dispute are in

the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone.'" Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008) (quoting Peskin v. Peskin, 271 N.J. Super. 261, 275 (App. Div. 1994)). Accordingly, courts "strain to give effect to the terms of a settlement wherever possible." Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005) (citation omitted).

Settlement agreements will only be vacated upon a showing of "'fraud or other compelling circumstances.'" Brundage, 195 N.J. at 601 (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 125 (App. Div. 1983)). Moreover, a party alleging fraud bears the burden of proving such fraud through clear and convincing evidence. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (1990).

To establish a claim of common law fraud, a party must demonstrate the following elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Allstate New Jersey Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (citation omitted). Where, as here, a party seeks an equitable remedy in lieu of monetary damages, the party need not prove the defendant's scienter. Id. at 148.

A-2447-19

The Chancery Division did not misapply its discretion in finding plaintiff did not present clear and convincing evidence that defendants acted fraudulently in the procurement of the settlement agreement. Although plaintiff submitted some evidence in support of its motion, defendants countered that evidence with their own documentation and explanations.

Ortiz explained why she was present during the inspection and why there were handwritten notations on the permit application. The document changing the pharmacist in charge from Ortiz to Tran corroborated her explanation of the events. These explanations were not contradicted.

Moreover, in short order, within days after defendants submitted opposition to the initial order to show cause, the parties reached a resolution of their issues with the assistance of counsel. The settlement was placed on the record. The transcript reflects the parties all desired a mutual release of any and all claims arising out of the Agreement. To secure the mutual release of claims, plaintiff was willing to reduce the length of the Agreement's non-competition and non-solicitation provisions from two and three years respectively, to only an additional six months.

Plaintiff did not provide any evidence to support its contention that it relied upon Ortiz's assertion that she had not violated the Agreement in deciding

13

to settle. In fact, to the contrary, counsel stated during the settlement proceeding that the important consideration for resolving the dispute was that, going forward, Ortiz comply with the restrictive covenants until May 2019. Plaintiff has not presented any evidence that Ortiz did not comply with the restrictions during the pertinent time period.

Many factors go into a party's decision to settle a dispute. Here, plaintiff did not present any of its reasons for settlement when counsel placed the terms of the settlement agreement on the record, other than its demand that Ortiz comply with the restrictive covenants until May 2019. It is as likely as any other reason that plaintiff was willing to reduce these restrictive covenants in exchange for Ortiz's agreement not to pursue her counterclaims. Without anything more presented in the record, the Chancery judge could not find plaintiff relied on Ortiz's denial of any violation in making the decision to settle its claims.

We are satisfied the court's determination that the evidence was "in equipoise" was supported by the record and not a mistaken exercise of discretion. Plaintiff's evidence was insufficient to support a clear and convincing conclusion of fraud to overturn the settlement agreement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2447-19